**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

HAROLD N. TAYLOR, JR.,

Plaintiff,

- v -                                                          Civ. No. 9:10-CV-140
                                                                        (MAD/RFT)

NEW YORK STATE DEPARTMENT OF CORRECTIONAL
SERVICES; BRIAN FISCHER, *Commissioner, New York State*
*Department of Correctional Services*; BRUCE YELICH,
*Superintendent, Bare Hill Correctional Facility*; DEBBIE KEMP,
*Deputy Superintendent of Administration, Bare Hill Correctional*
*Facility*; CAPTAIN HARVEY, *individually and in his official*
*capacity as Security Captain, Bare Hill Correctional Facility*;
SERGEANT GILMORE, *individually and in his official*
*capacity as Corrections Sergeant at Bare Hill Correctional*
*Facility*; BR. RUSSELL, *individually and in his official*
*capacity as Corrections Officer at Bare Hill Correctional Facility*;
DALE ARTUS, *Superintendent, Clinton Correctional Facility*;
STEVEN SWEENEY, *individually and in his official*
*capacity as Corrections Sergeant at Clinton Correctional Facility*;
DAVID HARDIN, *individually and in his official*
*capacity as Corrections Officer at Clinton Correctional Facility*;
TODD GOODMAN, *individually and in his official*
*capacity as Corrections Officer at Clinton Correctional Facility*,

Defendants.

**APPEARANCES:**                              **OF COUNSEL:**

HAROLD N. TAYLOR, JR.
06-B-2920
Plaintiff, *Pro Se*
Gowanda Correctional Facility
P.O. Box 311
Gowanda, NY 14070

HON. ERIC T. SCHNEIDERMAN                JAMES SEAMAN, ESQ.
Attorney General of the State of New York    Assistant Attorney General
Attorney for Defendants
The Capitol
Albany, NY 12224

**RANDOLPH F. TREECE**
**United States Magistrate Judge**

## REPORT-RECOMMENDATION and ORDER

*Pro se* Plaintiff Harold N. Taylor, Jr., brings this civil rights action, pursuant to 42 U.S.C. § 1983, alleging, *inter alia*, that Defendants subjected him to excessive force and retaliated against him for filing grievances.  Dkt. No. 1, Compl.  Pending before this Court is Defendants' Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56(b).  Dkt. No. 37.  Plaintiff's only response to the Motion has been to ask the Court for extensions of time to respond, all of which the Court has granted.  *See* Dkt. Nos. 39, 40, 41, & Text Orders, dated June 13, 2011 & Dec. 7, 2011.  In all, we have granted Plaintiff three extensions of time to respond to the Defendants' Motion, of which one extension was granted *sua sponte* after Plaintiff's second deadline to respond had passed.  *See* Dkt. No. 40, Order.  Despite the Court's leniency and accommodation, Plaintiff has failed to submit any substantive response to the Motion.   For the reasons that follow, it is hereby recommended that Defendants' Motion be **granted**.

## I. DISCUSSION

### A. Standard of Review

Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *accord F.D.I.C. v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994).  The moving party bears the burden to demonstrate through "pleadings, depositions, answers to interrogatories, and admissions on file, together with [ ] affidavits, if any," that there is no genuine issue of material fact.  *F.D.I.C. v. Giammettei*, 34 F.3d at 54 (quoting

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  "When a party has moved for summary judgment on the basis of asserted facts supported as required by [Federal Rule of Civil Procedure 56(e)] and has, in accordance with local court rules, served a concise statement of the material facts as to which it contends there exist no genuine issues to be tried, those facts will be deemed admitted unless properly controverted by the nonmoving party." *Glazer v. Formica Corp.*, 964 F.2d 149, 154 (2d Cir. 1992).

To defeat a motion for summary judgment, the non-movant must set out specific facts showing that there is a genuine issue for trial, and cannot rest merely on allegations or denials of the facts submitted by the movant. FED. R. CIV. P. 56(c); *see also Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir. 2003) ("Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when the moving party has set out a documentary case."); *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525-26 (2d Cir. 1994).

When considering a motion for summary judgment, the court must resolve all ambiguities and draw all reasonable inferences in favor of the non-movant.  *Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 164 F.3d 736, 742 (2d Cir. 1998).  "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them.  Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994).  Furthermore, where a party is proceeding *pro se*, the court must "read [his or her] supporting papers liberally, and . . . interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994); *accord*, *Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995).  This liberal standard, however, does not excuse

a *pro se* litigant from following the procedural formalities of summary judgment. *Showers v. Eastmond*, 2001 WL 527484, at *2 (S.D.N.Y. May 16, 2001).

### B. Plaintiff's Failure to Respond to Defendants' Summary Judgment Motion

Rule 56(e) of the Federal Rules of Civil Procedure provides that summary judgment, if appropriate, may be entered against an adverse party who fails to respond to the motion and set forth specific facts showing that there is a genuine issue for trial. *See also Baines v. McGinnis*, 766 F. Supp. 2d 502, 503 (W.D.N.Y. 2011) (citing FED. R. CIV. P. 56(e)). Additionally, this District's Local Rules provide that "[*t*]*he Court shall deem admitted any facts set forth in the* [moving party's] *Statement of Material Facts that the opposing party does not specifically controvert.*" N.D.N.Y.L.R. 7.1(a)(3) (emphasis in original).

The Second Circuit has held that when a party moves for summary judgment against a *pro se* litigant, either the movant or the district court must provide the *pro se* litigant with notice of the nature of summary judgment and the consequences, such as dismissal of their action, of failing to respond to such a motion. *Vital v. Interfaith Med. Ctr.*, 168 F.3d 615, 620 (2d Cir. 1999); *see also Young v. City of Syracuse Dep't of Pub. Works*, 307 F. App'x 512, 514 (2d Cir. Jan. 21, 2009). Here, Plaintiff had notice of the consequences of failing to respond to Defendants' Motion for Summary Judgment on two separate occasions: first, in Defendants' Notice of Motion, Dkt. No. 37, at p. 3, and second, in this Court's Order extending, *sua sponte*, Plaintiff's time to respond to the Motion, Dkt. No. 40 (noting Second Circuit decisions regarding the importance of providing notice of the nature of summary judgment and its potential consequences to *pro se* litigants). In summary, both notices state that any factual assertions in the Defendants' affidavits will be accepted by the Court as being true unless Plaintiff submits affidavits or other documentary evidence contradicting

the assertions, and that summary judgment may be entered against Plaintiff for failing to respond

such that his action would be dismissed without a trial.  Thus, Plaintiff was clearly given more than

adequate notice of his obligation to respond to Defendants' Motion and of the consequences of

failing to do so.  Accordingly, the Court will accept Defendants' factual assertions as true in

determining whether they are entitled to Summary Judgment.

### C. Background of Plaintiff's Claims

Plaintiff testified at his deposition that on January 30, 2009, while he was incarcerated at

Bare Hill Correctional Facility, Defendant Sergeant Gilmore grabbed him by the neck and slammed

his head and body onto a table while screaming at him about a grievance Plaintiff previously filed.

Dkt. No. 37-26, Defs.' Statement of Material Facts [hereinafter "Defs.' 7.1 Statement"], at ¶¶ 4-8.

After Plaintiff returned to his dorm, he observed a one or one-half-inch scratch on the left side of

his neck and reported the assault to a dorm officer.  *Id.* at ¶ 16.  Plaintiff was seen at the medical unit

that night and photographs were taken; the examining nurse noted that Plaintiff had no injuries.  *Id.*

at ¶¶ 18-19; Dkt. No. 37-15, Ex. 17, Inmate Injury Report, dated Jan. 30, 2009.  Plaintiff filed a

grievance about this harassment and assault.  Defs.' 7.1 Statement at ¶ 22.

On March 2, 2009, Officer Mainville, who is not a Defendant in this action, collected urine

from the inmates in Plaintiff's dorm to test for illegal substances.  *Id.* at ¶ 23.  Defendant Russell,

who was certified to conduct urine tests, processed Plaintiff's urine on March 5, 2009.  *Id.* at ¶ 24.

The sample returned a reading of .303; a concentration of .304 is the established sufficient cut-off

for a finding that a controlled substance is present in the urine sample.  Dkt. No. 37-21, Bradley

Russell Decl., dated June 1, 2011, at ¶¶ 4 & 9.  Because Plaintiff's urine tested so close to the

calibrated finding establishing that an inmate is using drugs, "just 1/1000 from the .304 cut-off[,]"

Defendant Russell believed, based on his experience, that "this result would not have been obtained unless the inmate had some illegal substance in his urine[,]" and he obtained the authority from Defendant Captain Harvey to test Plaintiff's urine again. *Id.* at ¶¶ 6 & 9-10. Defendant Russell's second test of Plaintiff's urine yielded a result of .318. *Id.* at ¶ 10. New York State Department of Corrections and Community Supervision ("DOCCS") Directive 4937, which governs the procedure for testing inmate urine samples, requires at least two positive readings for a finding that an inmate had used a controlled substance, so Defendant Russell ran an additional test, which rendered a result of .317. *Id.* at ¶¶ 7 & 10. Based on these test results, Defendant Russell issued a misbehavior report to Plaintiff for violating Prison Rule 113.24, use of a controlled substance. *Id.* at ¶ 11; Defs.' 7.1 Statement at ¶ 31.

Plaintiff's disciplinary hearing commenced on March 19, 2009, before Defendant Hearing Office Kemp. Defs.' 7.1 Statement at ¶ 45. Prior to the hearing, Plaintiff met with his hearing assistant and requested a multitude of documents and made Freedom of Information Law ("FOIL") requests. *Id.* at ¶¶ 36-44. At the outset of the hearing, Plaintiff received a copy of the misbehavior report, the test request form, a uranalysis procedure form, and the test results. *Id.* at ¶ 46. Plaintiff informed Defendant Kemp that some of his FOIL requests were still outstanding and requested a continuance of his disciplinary hearing, which Defendant Kemp granted. *Id.* at ¶¶ 48-49. The hearing resumed on March 30, 2009, after Plaintiff received his FOIL materials, wherein Defendant Kemp and Plaintiff "reviewed together the various documents which made up the record," including the request for urinalysis test form, which stated that Plaintiff had not taken medication recently, and Plaintiff was allowed to proffer that he had prescriptions for Naproxen and Claritin. *Id.* at ¶¶ 50-53. The hearing was adjourned again in order to obtain Defendant Russell's testimony. *Id.* at ¶ 54. On

April 8, 2009, Defendant Russell and Officer Mainville, who is not a Defendant, testified, among other witnesses, confirming the documentary evidence and describing the urine collection procedure. *Id.* at ¶¶ 55-61.   Pursuant to the testimony and documentary evidence, Defendant Kemp found Plaintiff guilty and sentenced him to three months confinement in the special housing unit ("SHU") from April 8th until July 8th, three months loss of good time credit, and the loss of commissary, packages, and phone privileges for six months.  *Id.* at ¶ 74; *see also* Dkt. No. 37-14, Ex. 12, Hr'g Disposition, dated Apr. 8, 2009.   Plaintiff appealed Defendant Kemp's disposition, and on July 2, 2009, Norman Bezio, the Director of SHU, reversed the ruling.[1]

Sometime before April 29, 2009, Plaintiff was transferred to Clinton Correctional Facility. At his deposition, Plaintiff testified that on April 29, 2009, he was escorted from his cell to the Clinton mental health unit by a corrections officer he did not know, but believes was Defendant Officer Hardin.  Defs.' 7.1 Statement at ¶ 80.[2]   According to his testimony, Defendants Sergeant Sweeney and Officer Hardin threatened Plaintiff on the way to the mental health unit by telling him to notify the medical staff that he wanted to kill himself, because if he failed to do so, he would wish he had.  *Id.* at ¶ 81.   After his escort to a cell in the mental health unit, Defendants Sweeny, Hardin, and Goodman, along with other unknown officers, kicked and/or punched Plaintiff in the back of his legs, the back of his head, the back of his neck, and stomped on his feet, for approximately four minutes.  *Id.* at ¶¶ 83-84.   Defendant Sweeney told Plaintiff that this "is how we do it up north."  *Id.* at ¶ 84.

---

[1] Plaintiff was not released from SHU status at that time, however, because Plaintiff had received another disciplinary ticket relating to a use of force while at Clinton Correctional Facility and was sentenced to additional SHU confinement as a result.  *See* Defs.' 7.1 Statement at ¶ 76.

[2] Plaintiff was not in SHU prior to April 29, 2009, despite Defendant Kemp's disposition, but rather was kept in keeplock status in a regular cell at both Bare Hill and Clinton.  *See* Defs.' 7.1 Statement at ¶ 79.

Plaintiff was examined by a nurse, Kimberly Kim, who is not a Defendant in this action, who prepared a report describing Plaintiff's injuries as "scrapes" and "superficial abrasions." *Id.* at ¶¶ 82 & 85. She treated an injury to Plaintiff's ear by patting it with a cotton swab, but otherwise offered no other treatment. *Id.* at ¶ 86. Photographs were taken of Plaintiff a few minutes after the alleged assault, which he contends are true and accurate depictions. *Id.* at ¶ 87. Plaintiff did not file a grievance about this incident. *Id.* at ¶ 88. He was, however, issued a misbehavior ticket from Defendant Hardin, charging him with violent conduct, assaulting the staff, and with creating a disturbance. Dkt. No. 37-17, Ex. 25, Inmate Misbehavior Report, dated April 29, 2009. A disciplinary hearing was held on May 21, 2009, whereupon Plaintiff was found guilty of all charges and sentenced to twelve months confinement in SHU with six months suspended, twelve months loss of privileges with six months suspended, and twelve months recommended loss of good time allowances with six months suspended. *See* Dkt. No. 37-20, Ex. 29, Disciplinary Hr'g Tr., dated May 21, 2009.[3]

In his Complaint, Plaintiff contends (1) he was assaulted by Defendant Gilmore at Bare Hill

---

[3] By Decision and Order, filed on April 2, 2010, the Honorable Norman A. Mordue, then-Chief United States District Judge, determined that Plaintiff's claims arising from the May 21, 2009 disciplinary hearing implicated the validity of his disciplinary sentencing because he was subjected to sanctions affecting both the duration and the conditions of his confinement. Dkt. No. 6 at p. 5. Thus, under the "favorable termination" rule of *Heck v. Humphrey*, 512 U.S. 477, 487 (1994) (whereupon a § 1983 action seeking money damages is not congnizable if a decision in favor of the plaintiff would necessarily invalidate a criminal conviction, unless that "conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal . . . or called into question by a federal court's issuance of a writ of *habeas corpus*"), Plaintiff is barred from prosecution of his claims regarding his disciplinary sentence arising from this hearing unless he was "willing to forever forego a challenge to the loss of good time which was part of the penalty imposed after the **second disciplinary hearing**." Dkt. No. 6 at 7 (emphasis in original); *see also Peralta v. Vasquez*, 467 F.3d 98, 104 (2d Cir. 2006). Judge Mordue granted Plaintiff thirty days to inform the Court whether or not he was waiving his claims challenging the recommended loss of good time credits, and advised Plaintiff that a failure to respond would result in the Court concluding that Plaintiff chose **not** to waive his due process claims to the loss of credits. Dkt. No. 6 at pp. 7-8 (emphasis in original). Plaintiff did not respond to the Order, and, accordingly, Judge Mordue dismissed any claims that Plaintiff set forth in his Complaint arising from the May 21, 2009, disciplinary hearing. Dkt. No. 7, Order, dated July 7, 2010. Thus, this Report and Recommendation will not discuss any such allegation of due process violations that Plaintiff may have included in his Complaint.

Correctional Facility; (2) after Plaintiff filed a grievance about Defendant Gilmore assaulting him, he suffered retaliation by Defendants Russell and Harvey such that his urine was tested; (3) Defendant Kemp denied him due process in his disciplinary hearing regarding his urine test results; (4) Defendants Sweeney, Goodman, and Hardin assaulted him at Clinton Correctional Facility in retaliation for filing a grievance against Defendant Gilmore; (5) the Defendants conspired together to deprive Plaintiff of his constitutional rights; and (6) Defendants Artus, Fischer, Harvey, and Yelich were liable for these violations in their roles as supervisors.

### D. Exhaustion of Administrative Remedies

The Prison Litigation Reform Act of 1996 ("PLRA") imposes several restrictive conditions on a prisoner's ability to bring a federal civil rights action.  With regard to the issues before this Court, the PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  The Supreme Court has held that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002) (citations omitted).  Further, proper exhaustion "entails both 'complet[ing] the administrative review process in accordance with the applicable procedural rules' and providing the 'level of detail necessary in a grievance to comply with the grievance procedures.'" *Amador v. Andrews*, 655 F.3d 89, 96 (2d Cir. 2011) (citing *Woodford v. Ngo*, 548 U.S. 81, 88 (2006) and *Jones v. Bock*, 549 U.S. 199, 218 (2007)).

Exhaustion of administrative remedies under the PLRA is an affirmative defense which must

be raised and proven by the defendants. *Jenkins v. Haubert*, 179 F.3d 19, 28-29 (2d Cir. 1999) (noting that exhaustion of remedies is an affirmative defense); *Howard v. Goord*, 1999 WL 1288679, at *3 (E.D.N.Y. Dec. 28, 1999) (citations omitted) (noting that the burden remains with the defendants to prove that administrative remedies had not been exhausted). The party opposing the affirmative defense "may delay the ultimate determination as to its validity until trial by showing that there is a genuine issue of material fact to be determined." *Howard v. Goord*, 1999 WL 1288679 at *3 (citations omitted).

In New York State, the administrative remedy process consists of three steps. First, a grievance is submitted to the Inmate Grievance Review Committee ("IGRC"), a committee comprised of both inmates and facility employees.[4] N.Y. COMP. CODES R. & REGS. tit. 7, § 701.5(b). The IGRC reviews and investigates the formal complaint and then issues a written determination. *Id.* Second, if the IGRC decision is appealed, the superintendent of the facility reviews the IGRC's determination and issues a decision. *Id.* at § 701.5(c). Finally, if the superintendent's decision is appealed, the Central Office Review Committee ("CORC") makes the final administrative determination. *Id.* at § 701.5(d). Only upon exhaustion of these three levels of review may a prisoner seek relief pursuant to § 1983 in federal court. *Bridgeforth v. Bartlett*, 686 F. Supp. 2d 238, 239 (W.D.N.Y. 2010) (citing, *inter alia*, *Porter v. Nussle*, 534 U.S. at 524); *see also Neal v. Goord*, 267 F.3d 116, 121 (2d Cir. 2001), *overruled on other grounds by Porter v. Nussle*, 534 U.S. 516.

Here, Defendants have moved for Summary Judgment on Plaintiff's failure to exhaust the administrative remedy procedures regarding two of Plaintiff's claims: his claim alleging Defendant Gilmore assaulted him on January 30, 2009, and his claim that Defendants Sweeney, Goodman, and

---

[4] The IGRC is a five-member body consisting of two voting inmates, two voting staff members, and a non-voting chairperson (who may be an inmate, staff member, or volunteer). N.Y. COMP. CODES R. & REGS. tit. 7, § 701.4.

Hardin assaulted him on April 29, 2009.  Defendants state that while Plaintiff alleges repeatedly that he filed a grievance against Defendant Gilmore, Plaintiff failed to appeal any such grievance to the CORC.  *See* Dkt. No. 37-27, Defs.' Mem. of Law, at p. 5.  In support, they offer the Affidavit of Jeffery Hale, the Assistant Director of the Inmate Grievance program for DOCCS, who states that his investigation revealed that Plaintiff had not appealed any grievances through CORC.  Dkt. No. 37-25, Jeffery Hale Aff., dated June 1, 2011, at ¶ 9.  Further, Defendants claim that Plaintiff failed to file a grievance about Defendants' Sweeney, Goodman, and Hardin's purported attack on April 29, 2009.  Even though a disciplinary hearing was held on May 21, 2009, to examine the charges that Plaintiff engaged in violent conduct and assaulted Clinton Correctional Facility staff on April 29th, Plaintiff made no mention of an assault upon him during that hearing.  *See* Defs.' Mem. of Law at p. 11 (citing Dkt. No. 37-20, Ex. 29, Disciplinary Hr'g Tr., dated May 21, 2009).  As mentioned above, Plaintiff has failed to respond to or offer any evidence against Defendants' Motion for Summary Judgment.[5]  Accordingly, this Court must find Defendants' undisputed evidence controlling, and as such we find Plaintiff failed to exhaust his administrative remedies as to the two claims of assault.[6]  Therefore, because the PLRA requires "proper exhaustion" – that is, "using all steps that the agency holds out, and doing so properly," we recommend that Plaintiff's claims relating to Defendants Gilmore, Sweeney, Goodman, and Hardin be **dismissed** for a failure to

---

[5] We note that Plaintiff's allegations do not claim that he properly exhausted his administrative remedies.  *See* Compl.

[6] Though exhaustion is mandatory, certain caveats apply wherein a prisoner's failure to exhaust may be excused: (1) when administrative remedies are not available to the prisoner, *Abney v. McGinnis*, 380 F.3d 663 (2d Cir. 2004); (2) when the defendants waive the defense by failing to raise or preserve it, *Johnson v. Testman*, 380 F.3d 691 (2d Cir. 2004), or acted in such a manner that they are estopped from raising it, *Ziemba v. Wezner*, 366 F.3d 161 (2d Cir. 2004); and (3) when special circumstances exist to justify the prisoner's failure to comply with the exhaustion requirement, *Giano v. Goord*, 380 F.3d 670 (2d Cir. 2004).  However, because Plaintiff failed to provide any evidence opposing the Defendants' Motion, he fails to implicate any of these scenarios.

exhaust.  *See Woodford v. Ngo*, 548 U.S. at 90.

When a prisoner fails to exhaust available administrative remedies, and the time permitted for pursuing such remedies has not expired, the complaint is ordinarily dismissed without prejudice thus allowing the prisoner to submit a grievance to the particular institution.  42 U.S.C. § 1997e(a); *Snider v. Melindez*, 199 F.3d 108, 111-12 (2d Cir. 1999); *see also Melo v. Combes*, 1998 WL 67667 (S.D.N.Y. Feb. 18, 1998); *Midgette v. Doe*, 1997 WL 634280, at *1 (S.D.N.Y. Oct. 15, 1997). However, if the prisoner failed to exhaust administrative remedies which were available to him after the onset of conditions giving rise to his complaints, yet such remedies are no longer available, *i.e.*, prisoner was transferred to another institution or released from custody, then it is proper for the court to dismiss the complaint with prejudice because any attempts to exhaust would be futile.  *Berry v. Kerik*, 366 F.3d 85, 86 (2d Cir. 2004).

Here, Plaintiff has since been transferred from Bare Hill and Clinton to Gowanda Correctional Facility and thus no longer has access to administrative remedies related to the claims in this Complaint available to him.  *See* New York State DOCCS, Inmate Population Information Search, *available at* http://nysdoccslookup.doccs.state.ny.us (last visited January 31, 2012, search for Department Identification Number ("DIN") 06-B-2920).  Accordingly, and because Plaintiff has failed to provide the Court with any documentary evidence elaborating on the merits of his claims, we recommend **dismissal** of his claims against Defendants Gilmore, Sweeney, Goodman, and Hardin **with prejudice** without further consideration of the merits.

### E. Plaintiff's Remaining Claims

#### 1. *Retaliation*

Plaintiff claims that Defendants Russell and Harvey tested Plaintiff's urine and issued him a misbehavior report based on the test results in retaliation for Plaintiff's grievance complaint against Defendant Gilmore.  Compl. at ¶¶ 80-93.

In order to state a valid retaliation claim, a plaintiff must allege "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Espinal v. Goord*, 558 F.3d 119, 128 (2d Cir. 2009) (quoting *Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004)).  The required causal connection means, "that the protected conduct was a 'substantial or motivating factor' in the defendants' decision to take action against the plaintiff." *Tafari v. McCarthy*, 714 F. Supp. 2d 317, 347 (N.D.N.Y. 2010) (quoting *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Plaintiff fails to establish any connection between Defendants Russell and Harvey and the grievance Plaintiff filed against Defendant Gilmore.  Defendant Russell testified that when he "conducted the testing of [P]laintiff's urine back on March 5, 2009 . . . [he] was not aware of any grievance or complaint this inmate may have written." Dkt. No. 37-21, Bradley Russell Decl., dated June 1, 2011, at ¶ 13.  Defendant Harvey testified that "[w]hen Officer Russell informed me that [P]laintiff's urine had tested .303 with a cut-off of .304, it was clear . . . that there was an obvious presence of illegal substance in the urine," and accordingly, "whether this inmate had filed a grievance or not, [he] would have authorized the [additional] test, because [his] experience told [him] that [Plaintiff] had an illegal substance in his urine." Dkt. No. 37-23, Rodney J. Harvey Decl.,

dated June 1, 2011, at ¶¶ 3-5.

Because Plaintiff cannot establish that Defendants Harvey or Russell even had knowledge of the protected activity, let alone that Plaintiff's grievance against Defendant Gilmore motivated them to subject Plaintiff's urine to an additional test, Plaintiff fails to establish a valid retaliation claim.  *See  Collins v. N.Y. City Transit Auth.*, 305 F.3d 113, 118 (2d Cir. 2002) ("To make out a *prima facie* case of retaliation, [plaintiff] must show . . . that the [defendant] was aware of that [protected] activity[.]"); *see also Chukwurah v. Stop & Shop Supermarket Co.*, 354 F. App'x 492, 495 (2d Cir. 2009) (quoting *Collins*).  Because Plaintiff does not provide evidence implicating a causal connection between Defendants Russell and Harvey and the protected conduct, this Court need not delve into whether testing Plaintiff's urine for the presence of illegal controlled substances constitutes adverse action.  We note, however, that even if Plaintiff had sufficiently established such a causal nexus existed, "'[p]risoners may be required to tolerate more than public employees, who may be required to tolerate more than average citizens, before a [retaliatory] action taken against them is considered adverse.'  Urine tests are a fact of prison life, and . . . one urine test would [not] chill a prisoner of ordinary firmness from filing grievances." *Bumpus v. Canfield*, 495 F. Supp. 2d 316, 327 (W.D.N.Y. 2007) (quoting, *inter alia*, *Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001), *overruled on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002)).  Plaintiff's claim against Defendants Russell and Harvey should be **dismissed**.

## 2. *Due Process*

Plaintiff also claims that he was deprived of his right to due process by Defendant Kemp, who presided over the disciplinary hearing on Plaintiff's misbehavior report issued because of the urine tests.  Compl. at ¶¶ 121-29.

As an initial matter, in order to state a due process claim under § 1983, an inmate must first establish that he enjoys a protected liberty interest. *Arce v. Walker*, 139 F.3d 329, 333 (2d Cir. 1998) (citing *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989)). Plaintiff brings his due process claims against Defendant Kemp for upholding the disciplinary ticket charging Plaintiff with illegal drug use and sentencing Plaintiff to three months confinement in the SHU, three months loss of good time credit,[7] and the loss of commissary, packages, and phone privileges for six months. However, Plaintiff fails to allege any liberty interest that he was deprived of as a result of the hearing disposition.

A prisoner asserting that he was denied due process in connection with segregated confinement or a loss of privileges must make a threshold showing that the deprivation of which he complains imposed the requisite atypical and significant hardship. *See Sandin v. Connor*, 515 U.S. 472, 484 (1995) (noting that a prisoner is not entitled to due process protections unless the resulting restricting confinement subjected the prisoner to "atypical and significant hardship . . . in relation to the ordinary incidents of prison life"). Whether the conditions of the segregation amounted to an atypical and significant hardship "turns on the duration of the segregation and a comparison with the conditions in the general population and in other categories of segregation." *Arce v. Walker*, 139 F.3d at 336 (citations omitted). However, the Second Circuit has cautioned that "there is no bright-line rule regarding the length or type of sanction" that meets the above-stated *Sandin* standard. *Jenkins v. Haubert*, 179 F.3d 19, 28 (2d Cir. 1999); *see also Ayers v. Ryan*, 152 F.3d 77, 83 (2d Cir. 1998) ("Whether or not a period of disciplinary confinement amounts to an atypical and significant hardship is a fact-intensive inquiry[.]"). Nevertheless, the Second Circuit has suggested that

_____

[7] Because Defendant Kemp's disciplinary sentence was reversed on appeal, no issue of mixed sanctions is present here. *See supra* note 3.

**-15-**

confinement for a period of less than 101 days would not constitute an atypical and significant hardship. *See Colon v. Howard*, 215 F.3d 227, 231-32 (2d Cir. 2000). Comparatively, segregative sentences of 125-288 days are deemed to be "relatively long" and therefore necessitate "specific articulation of fact findings before the district court could properly term the confinement atypical or insignificant." *Sims v. Artuz*, 230 F.3d 14, 23 (2d Cir. 2000).

In reviewing the duration and conditions of Taylor's special confinement as a result of the guilty disposition of the misbehavior hearing, we do not find his confinement in SHU and his loss of various privileges to be atypical and significant. Plaintiff did not enter SHU until April 29, 2009, and Defendant Kemp's guilty disposition was reversed on July 2, 2009. Defs.' 7.1 Statement at ¶¶ 75 & 79 (citing Dkt. Nos. 37-16, Ex. 18, Mem. of Norman R. Bezio, Director of SHU, dated July 2, 2009, & 37-2, Pl.'s Dep., at pp. 88-89 & 138-39). Plaintiff remained in SHU after the reversal of Defendant Kemp's decision on July 2nd because he had received another disciplinary ticket on April 29, 2009, at Clinton. *Id.* at ¶ 79 (citing Dkt. No. 37-17, Ex. 25, Inmate Misbehavior Report, dated April 29, 2009). Therefore, as of July 2nd, Plaintiff was no longer kept in SHU as a result of Defendant Kemp's disposition. This Court refuses to find that this two-month confinement in SHU and corresponding loss of privileges constitutes an atypical and significant hardship such that it violates the Constitution.[8]

Thus, because Plaintiff does not allege any liberty interest by which he was entitled to some measure of due process before being deprived therewith, his due process claims against Defendant Kemp should be **dismissed**.

---

[8] Even if Plaintiff identified a valid liberty interest that he was deprived of by operation of Defendant Kemp's disciplinary hearing disposition, we note that he failed to allege any facts plausibly suggesting that he was deprived of procedural due process protections (such as being deprived of witnesses, evidence, an opportunity to be heard, a fair and impartial hearing officer, etc.).

3. *Claims That Fail Without an Underlying Constitutional Violation*

Plaintiff alleges that the various Defendants conspired with one another to inflict constitutional violations against him. *See* Compl. at ¶¶ 80-102. While Plaintiff's claims against Defendants Gilmore, Sweeney, Hardin, and Goodman should be dismissed for a failure to exhaust administrative remedies, *see supra* Part I.D, Plaintiff's claim of conspiracy between Defendants Russell and Harvey arguably survives. *See supra* Part I.E.1. Nonetheless, Plaintiff's claims of a conspiracy between the Defendants are meritless.

To support a conspiracy claim under § 1983, a plaintiff must demonstrate (1) an agreement between two or more state actors or a state actor and a private party; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages. *Ciambriello v. County of Nassau,* 292 F.3d 307, 324-25 (2d Cir. 2002). In addition, "complaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed; diffuse and expansive allegations are insufficient, unless amplified by specific instances of misconduct." *Dwares v. City of N.Y.*, 985 F.2d 94, 100 (2d Cir. 1993) (citations, internal quotation marks, and internal alterations omitted).

Plaintiff's conspiracy claim should be dismissed because he has failed to state any underlying constitutional violation. *See Romer v. Morgenthau*, 119 F. Supp. 2d 346, 363 (S.D.N.Y. 2000) ("A violated constitutional right is a natural prerequisite to a claim of conspiracy to violate such right.") (citation omitted). Thus, the failure of a plaintiff to show an underlying constitutional violation on which to base a section 1983 conspiracy claim means the conspiracy claims fails as a matter of law. *See Edwards v. Horn*, 2012 WL 473481, at *18 (S.D.N.Y. Feb. 14, 2012).

Additionally, although he does not explicitly assert it in his Complaint, this Court, in consideration of the leniency given to *pro se* litigants, interprets Plaintiff's action as claiming a violation of 42 U.S.C. § 1985, as well.

The only relevant section of that statute is subsection (3) which states, in pertinent part:

> If two or more persons . . . conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; . . . , if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

42 U.S.C. § 1985(3).

To recover under this section, a plaintiff must show the existence of (1) a conspiracy (2) meant to deprive a person or persons of the equal protection of the laws or privileges and immunities under the laws with (3) "an overt act in furtherance of the conspiracy[,] (4) an injury to the plaintiff's person or property, or a deprivation of a right or privilege of a citizen of the United States[,]" and (5) "some racial or perhaps otherwise class-based, invidious discriminatory animus[.]" *Thomas v. Roach*, 165 F.3d 137, 146 (2d Cir. 1999) (citations omitted). "In this context, 'class-based animus' encompasses only those groups with discrete and immutable characteristics such as race, national origin, and sex." *Martin v. New York State Dept. of Corr. Servs.*, 115 F. Supp. 2d 307, 316 (N.D.N.Y. 2000) (citations omitted). Thus, to recover damages under § 1985, Plaintiff must allege facts from which purposeful discriminatory intent can be inferred. *Gen. Bldg. Contractors Ass'n, Inc. v. Pennsylvania*, 458 U.S. 375, 390-91 (1982) (cited in *Hill v. Philip Morris USA*, 2004 WL 1065548, at *4 (S.D.N.Y. May 11, 2004)); *see also Spencer v. Casavilla*, 903 F.2d 171, 174 (2d Cir. 1990) (finding that in order to state a claim under § 1985(3), a plaintiff "must allege, *inter alia*, that

*-18-*

the defendants who allegedly conspired sought, with *discriminatory intent*, to deprive the plaintiff of a right covered by the Constitution or other laws") (emphasis added).

As with conspiracy claims pursuant to section 1983, section 1985 claims also "require a showing of an underlying constitutional violation." *Edwards v. Horn*, 2012 WL 473481 at *18 (citing, *inter alia*, *Okoh v. Sullivan*, 2011 WL 672420, at *4 (S.D.N.Y. Feb. 24, 2011), *aff'd by* 441 F. App'x 813 (2d Cir. 2011)). Plaintiff has failed to set forth any constitutional violations, and accordingly, his section 1985 conspiracy claim should be dismissed as well. Even if the Court were to find any underlying constitutional violations, Plaintiff makes no allegations of a racial or class-based invidious discriminatory animus against him. Therefore, Plaintiff's claims of conspiracy, pursuant to either §1983 or § 1985, should be **dismissed**.

Plaintiff also claims that Defendants Artus, Fischer, Harvey, and Yelich are liable in their roles as supervisors. *See* Compl. at ¶¶ 130-73. Plaintiff essentially alleges these Defendants should have known that Plaintiff was at risk of experiencing all of the mistreatment alleged in his Complaint.

It is well settled that the personal involvement of a defendant is a prerequisite for the assessment of damages in a § 1983 action. *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977). Furthermore, the doctrine of *respondeat superior* is inapplicable to § 1983 claims. *See Polk County v. Dodson*, 454 U.S. 312, 325 (1981) (internal citations omitted); *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995). Thus, a defendant may not be liable for damages simply by virtue of holding a supervisory position. *See*, *e.g.*, *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996). Rather, the personal involvement of a supervisory defendant may be shown when:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to

*-19-*

> remedy the wrong, (3) the defendant created a policy or custom under which
> unconstitutional practices occurred, or allowed the continuance of such a policy or
> custom, (4) the defendant was grossly negligent in supervising subordinates who
> committed the wrongful acts, or (5) the defendant exhibited deliberate indifference
> to the rights of inmates by failing to act on information indicating that
> unconstitutional acts were occurring.

*Colon v. Coughlin*, 58 F.3d at 873.[9]

As with his claims of a conspiracy, because Plaintiff fails to show a underlying constitutional violation, his claims against these Defendants for supervisory liability under § 1983 cannot survive. *Fransua v. Vadlamudi*, 2008 WL 4810066, at *1 (2d Cir. Nov. 3, 2008). Nonetheless, Plaintiff provides no evidence to establish that the Defendants were personally involved in any of the alleged constitutional violations Plaintiff complains about. Even in his allegations, Plaintiff states no direct participation by the Defendants in the violations, nor that the Defendants' policies allowed the continuance of constitutional violations, nor that the Defendants were grossly negligent or deliberately indifferent in their supervision of subordinates. Claiming that the Defendants are liable as supervisors simply because they "knew or should have known" about the alleged violations is not enough to establish personal involvement. Therefore, because Plaintiff fails to allege any facts indicating these Defendants' involvement in the alleged wrongdoing, his claims against Defendants Artus, Fischer, Harvey, and Yelich should be **dismissed**.

---

[9] Several lower courts have struggled with the impact *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) had upon *Colon*, and specifically whether *Iqbal* calls into question certain prongs of the *Colon* five-part test for supervisory liability. *See Sash v. United States*, 674 F. Supp. 2d 531, 543 (S.D.N.Y. 2009) (collecting cases). Because the Second Circuit has not yet issued a decision settling this matter, *Colon* remains good law.

### F. Qualified Immunity

In light of the above analysis wherein this Court has assessed that Plaintiff failed to establish the Defendants violated his constitutional rights, it is unnecessary for us to consider this affirmative defense put forth by Defendants. *Saucier v. Katz*, 533 U.S. 194, 201 (2001) ("If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity.").

### G. Claim against DOCCS

Lastly, Plaintiff has named DOCCS as a Defendant in this action. By Decision and Order, dated April 2, 2010, the Judge Mordue dismissed Plaintiff's claims for monetary damages against DOCCS as barred by the Eleventh Amendment. *See* Dkt. No. 6 at p. 4. DOCCS was not dismissed as a Defendant at that time as Judge Mordue, reading the Complaint "liberally, [noted that] Plaintiff may also be seeking injunctive relief against" DOCCS. *Id.* The extent of Plaintiff's request for injunctive relief, however, is a request for an order enjoining the Office of the New York State Attorney General from representing the legal interests of Defendants Harvey, Gilmore, Russell, Sweeney, and Goodman, while also representing DOCCS, based on "an impermissible conflict of interest." *See* Compl. at ¶¶ 182-86. Because this Court recommends dismissal of all claims against these Defendants, Plaintiff's request for injunctive relief is moot, and Defendant DOCCS should now be **dismissed** from this action.

## II.  CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that the Defendants' Motion for Summary Judgment (Dkt. No. 37) be **granted** and this action be **dismissed**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).


Date:   February 23, 2012
       Albany, New York


_____
Randolph F. Treece
U.S. Magistrate Judge